**BEFORE THE JUDICIAL PANEL**
**ON MULTIDISTRICT LITIGATION**

| | | |
|---|---|---|
| IN RE '672 PATENT LITIGATION | ) ) | MDL Docket No. _____ |

**MEMORANDUM IN SUPPORT OF SUN MICROSYSTEMS, INC., YAHOO! INC. AND GOOGLE INC.'S MOTION TO TRANSFER PURSUANT TO 28 U.S.C.§ 1407**

RECEIVED CLERK'S OFFICE 2004 SEP 2 P 4: 28 JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

Sun Microsystems, Inc. ("Sun"), Yahoo! Inc. ("Yahoo!") and Google Inc. ("Google") (collectively, the "Moving Parties"), respectfully submit this memorandum in support of their motion (a) to transfer eight separate actions (pending in three different federal districts), all based on the same patent and all accusing the same technology of infringement, to a single district court, and (b) to consolidate those actions for coordinated pretrial proceedings pursuant to 28 U.S.C. § 1407.[1] For the convenience of the parties and witnesses, and to ensure the efficient and uniform conduct of pretrial proceedings, the Moving Parties respectfully suggest that the eight

[1] A detailed list of information about the eight cases is attached as Schedule A to the Motion to Transfer Pursuant To 28 U.S.C. § 1407 filed herewith. A copy of the complaint and currently available docket sheets in each of the eight actions is attached to the Declaration Of Donna Hill ("Hill Decl."), also filed herewith.

actions be transferred to either the Hon. Claudia Wilken or the Hon. Phyllis J. Hamilton, both of the United States District Court for the Northern District of California.

## INTRODUCTION

The eight infringement actions that are the subject of this motion involve a nationwide challenge to a patent that Compression Labs, Inc. ("CLI"), an owner of the patent, claims covers the international "JPEG" image compression standard. Although CLI currently has infringement suits pending that involve 41 companies practicing that standard, there are literally many thousands of additional potential defendants that have implemented the JPEG standard.

There is a compelling basis to consolidate these eight actions under § 1407. The lawsuits all focus on whether the patent is valid, enforceable and covers the international JPEG standard. All of the defendants and declaratory relief plaintiffs use the standard in various of their products or services. These actions thus present common, complex questions of fact, on which duplicative deposition and document discovery and pretrial proceedings will ensue absent consolidation. In particular, all the actions seek to construe the claims of one patent - a vital, complex and time consuming aspect of all of the cases - and determine whether that construction applies to the standard. All of the actions will also involve identical issues of patent invalidity and unenforceability. Thus, consolidating the pretrial proceedings in these cases under Section 1407 will not only serve the convenience of the parties and witnesses, it will ensure the uniform interpretation and application of the patent and the efficient conduct of the litigation.

Consolidation in the Northern District of California as requested by the Moving Parties is also appropriate. These cases have no relevant connection with the Eastern District of Texas where CLI chose to file suit. In contrast, nearly one-half of the current parties accused by CLI of

infringing the patent are headquartered in California, and 12 are headquartered in the Northern District of California. Accordingly, many of the parties' documents and witnesses important to this case are located in California. In addition, both of the inventors and the prosecutor of the patent live in the Northern District of California, where CLI was originally headquartered. In addition, the Northern District of California is a convenient location in which to conduct pretrial proceedings of a national scope, and has extensive expertise in efficiently handling complex patent litigation.[2]

## BACKGROUND

All eight cases proposed for transfer arise from CLI's allegation that its U.S. Patent No. 4,698,672 (the "'672 patent") is infringed by any product that uses the ubiquitous "JPEG" international standard for the compression of digital still images.

Created, displayed and transferred in a wide variety of electronic devices, digital still images are made up of streams of binary code, most millions of bits long. Because the storage or transmission of millions of bits of data can be a cumbersome and inefficient process, computer programs use algorithms to compress the amount of data needed to represent a digital image. Once an image is compressed it can be efficiently transferred or stored. Redisplay of the image requires decompression of the compressed data.

Because digital still images are often transferred from computer to computer, or camera to computer, both the sending and receiving systems must use the same compression/ decompres-

---

[2] Yahoo filed its declaratory judgment complaint in the District of Delaware where actions by 28 other accused infringers are pending, but agrees that California has the most significant nexus with the pending eight cases for purposes of MDL consolidated pretrial proceedings. In the event that the actions are not consolidated, however, Yahoo believes that the District of Delaware, where it filed its declaratory judgment action, is a more appropriate forum for resolution of its dispute with CLI, Forgent and GI than the Eastern District of Texas, where CLI sued Yahoo after Yahoo's Delaware suit was filed.

sion algorithm even if they are manufactured by different companies. To address this issue, a group of international experts drawn from industry and academia gathered to develop a uniform standard for still image compression. In 1992, this group, the Joint Photographic Experts Group ("JPEG"), published its uniform standard, the "JPEG Standard." In the years since it was announced, virtually every computer and digital camera system has incorporated the JPEG Standard, allowing systems from around the world to share digital images.

CLI participated in the development of the JPEG standard but never disclosed to the experts group its belief that the '672 patent, issued in 1987, would be infringed by that standard. CLI, which is now a wholly owned subsidiary of Forgent Networks, Inc. ("Forgent"), recently embarked on a course of suing many - and perhaps ultimately all - of the companies that use computer and digital systems utilizing the JPEG standard. In April 2004, Forgent, acting through CLI, sued 31 defendants for infringement of the '672 patent in two separate actions in the Eastern District of Texas, even though neither CLI or Forgent is located in that district, and none of the defendants has any relevant connections to that district.

Many of these defendants filed a federal declaratory judgment action against CLI in Delaware in early July, 2004. Forgent and General Instrument Corp. ("GI"), a co-owner of the '672 patent, were also named as defendants in this action.

Two of the Moving Parties, who had not been sued by CLI in its Texas suits, brought their own separate declaratory judgment actions concerning the '672 patent. On July 30, 2004, Sun filed a declaratory judgment action against CLI in the Northern District of California. Yahoo! filed a declaratory judgment action in the District of Delaware on August 3, 2004.

After Sun and Yahoo! filed suit, CLI filed a third action in the Eastern District of Texas against 11 defendants, including the Moving Parties Sun, Yahoo! and Google.[3] Like the defendants named in CLI's initial suits, none of these defendants has any relevant connections with the Eastern District of Texas.

There are virtually thousands of companies using the JPEG Standard across the country, all of which are potential targets of CLI's infringement claims. The eight current cases involving 41 accused infringers are as follows:[4]

-- *Compression Labs, Inc. v. Agfa Corp., et al.*, Case No. 2-04CV-158 DF; filed on April 22, 2004, and pending before the Hon. David Folsom in the Eastern District of Texas (Complaint attached as Exh. 1 to the Hill Decl.).

-- *Compression Labs, Inc. v. Dell, Inc. et al.*, Case No. 2-04CV-159 DF; filed on April 22, 2004, and pending before the Hon. David Folsom in the Eastern District of Texas (Complaint attached as Exh. 3 to the Hill Decl.).

-- *Agfa Corp., et al. v. Compression Labs, Inc., et al.*, Case No. 04-818 SLR; filed on July 2, 2004, and pending before the Hon. Sue L. Robinson in the District of Delaware (Complaint attached as Exh. 5 to the Hill Decl.).

-- *Sun Microsystems, Inc. v. Compression Labs, Inc.*, Case No. CV 04-03124 PJH; filed on July 30, 2004, and pending before the Hon. Phyllis J. Hamilton in the Northern District of California (Complaint attached as Exh. 7 to the Hill Decl.).

-- *Yahoo! Inc. v. Compression Labs, Inc., et al.*, Case No. 04-918 SLR; filed on August 3, 2004, and pending before the Hon. Sue L. Robinson in the District of Delaware (Complaint attached as Exh. 9 to the Hill Decl.).

---

3 Google filed a declaratory judgment action in the Northern District of California on September 17, 2004. Audiovox Corporation, Audiovox Electronics Corporation, BancTec, Inc., ScanSoft, INc. and TiVo, Inc. filed a declaratory judgment action in the District of Delaware of September 24, 2004.

4 All five of the declaratory relief actions name CLI; four also name Forgent and GI. One suit only seeks a declaration of non-infringement, three suits seek a declaration of non-infringement, unenforceability and invalidity, and the fifth seeks a declaration of non-infringement, invalidity and a variety of other claims related to the attempt to enforce the patent.

-- *Compression Labs, Inc. v. Acer America Corp., et al.*, Case No. 2-04CV-294 DF; filed on August 5, 2004, and pending before the Hon. David Folsom in the Eastern District of Texas (Complaint attached as Exh. 11 to the Hill Decl.).

-- *Google Inc. v. Compression Labs, Inc., et al.*, Case No. CV 04-03934 CW; filed on September 17, 2004, and pending before the Hon. Claudia Wilken in the Northern District of California (Complaint attached as Exh. 13 to the Hill Decl.).

-- *Audiovox Corporation, et al. v. Compression Labs, Inc., et al.*, Case No. 04-1293 SLR; filed on September 24, 2004, and pending before the Hon. Sue L. Robinson in the District of Delaware (Complaint attached as Exh. 15 to the Hill Decl.).

## ARGUMENT

### I. THE '672 PATENT ACTIONS SHOULD BE TRANSFERRED AND CONSOLIDATED FOR COORDINATED PRETRIAL PROCEEDINGS

Section 1407(a) specifies that the Panel may transfer and consolidate two or more civil cases for coordinated pretrial proceedings upon a determination (a) that the cases "involve[] one or more common questions of fact," (b) that the transfers will further "the convenience of the parties and witnesses," and (c) that the transfers "will promote the just and efficient conduct of [the] actions." The transfer and consolidation of cases under § 1407 is especially appropriate when it will eliminate the possibility of overlapping or inconsistent rulings and prevent the duplication of discovery. See *In re Litig. Arising from Termination of Retirement Plan for Employees of Fireman's Fund Ins. Co.*, 422 F. Supp. 287, 290 (J.P.M.L. 1976); *In re LTV Corp. Sec. Litig.*, 470 F. Supp. 859, 862 (J.P.M.L. 1979); *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 752 (E.D.N.Y. 1984). All of these requirements are satisfied and transfer and consolidation of these eight cases is appropriate.

### A. The '672 Patent Actions Involve Numerous Common Questions Of Law And Fact

The '672 patent actions clearly meet the first requirement of Section 1407(a) - that they present common questions of law and fact. Each case will require a court to resolve the same set of underlying legal and factual pretrial issues including (1) the construction of some or all of the claims of the '672 patent; (2) the invalidity of the '672 patent; (3) the unenforceability of the '672 patent based on inequitable conduct; (4) the application of the patent claims to the JPEG Standard; and (5) equitable defenses such as estoppel and laches. Because these cases share such common questions of law and fact, they are particularly well-suited for consolidation.[5]

As the Panel has explained in ordering transfer in a similar patent action, "[a]ll actions can thus be expected to share factual and legal questions with respect to the '275 patent concerning patent validity and related questions such as double patenting, prosecution laches, and inequitable conduct. Centralization under Section 1407 is necessary in order to eliminate duplicative discovery; prevent inconsistent pretrial rulings, especially with respect to time-consuming and complex matters of claim construction; and conserve the resources of the parties, their counsel and the judiciary." *In re Columbia University Patent Litigation*, 313 F. Supp.2d 1383, 1385 (J.P.M.L. 2004); *see also In re Mosaid Technologies, Inc., Patent Litigation*, 283 F. Supp.2d 1359, 1360 (J.P.M.L. 2003) (same); *In re Mailblocks, Inc., Patent Litigation*, 279 F. Supp.2d 1379, 1380 (J.P.M.L. 2003) (same); *In re MLR, LLC, Patent Litigation*, 269 F.

---

5 Because all of the actions involve a single patent applied to a uniform and ubiquitous standard, the cases present predominantly common questions. Discovery on any non-common issues can proceed concurrently with discovery on the common issues. *In re Gator Corp. Software Trademark & Copyright Litigation*, 259 F. Supp.2d 1378, 1381 (J.P.M.L. 2003); *In re Smith Patent Litigation*, 407 F. Supp. 1403, 1404 (J.P.M.L. 1976). If necessary, the question of whether and how the cases should be tried can be determined later.

Supp.2d 1380, 1381 (J.P.M.L. 2003) (same); *In re Gator Corp. Software Trademark & Copyright Litigation,* 259 F. Supp.2d 1378, 1380 (J.P.M.L. 2003).

Given the overwhelming number of common pretrial issues, including claim construction, common issues of infringement, common defenses, and common counterclaims against CLI and Forgent, consolidation is the only means for the cases to proceed efficiently.

### B. Consolidation Of These Actions Will Serve The Convenience Of The Parties And Witnesses

Consolidation of these actions will also serve the second criterion under Section 1407(a) - the convenience of the parties and witnesses involved in the actions. Without consolidation, fact and expert witnesses, including witnesses from third parties, will be subjected to duplicative discovery demands in each action about the invention of the '672 patent, the development of the JPEG standard and CLI's involvement in the standard setting process. Other witnesses will be deposed about the application of the same patent to the standard and the implementation of the standard. Consolidation will avoid these problems by enabling a single judge to formulate a pretrial discovery plan that will minimize witness inconvenience and overall expense. *See In re A.H. Robins Co., Inc. "Dalkon Shield" IUD Prods. Liab. Litig.*, 406 F. Supp. 540, 542 (J.P.M.L. 1975) (transfer "necessary in order to prevent duplication of discovery and eliminate possibility of conflicting pretrial rulings"); *In re Cuisinart Food Processor Antitrust Litig.*, 506 F. Supp. 651, 655 (J.P.M.L. 1981) (transfer would "effectuate a significant overall savings of cost and a minimum of inconvenience to all concerned with pretrial activities").

Consolidation will also enable counsel for CLI, Forgent and GI and counsel for the accused infringers to proceed more efficiently on a combined basis, thereby reducing their

individual efforts. *See, e.g., In re Baldwin-United Corp. Litig.*, 581 F. Supp. 739, 741 (J.P.M.L. 1984) ("prudent counsel will combine their forces and apportion the workload in order to streamline the efforts"). This will reduce the costs to all parties by limiting procedures such as the number of case management conferences, discovery plans, discovery disputes, claim construction briefs, summary judgment motions, and other pretrial matters, while also reducing travel expenses for all counsel.

### C. Consolidation Of These Actions Will Promote The Just And Efficient Conduct Of These Actions

#### 1. Consolidation of these actions will prevent duplicative discovery and conflicting pretrial rulings.

As discussed above, the complaints in the eight '672 patent actions raise many of the same factual and legal issues and seek overlapping relief. All of the cases center on the claim construction of the '672 patent, the validity and enforceability of the patent, and the application of the patent's claims to the JPEG standard. In addition to preventing duplicative discovery as discussed above, transfer is necessary to prevent inconsistent claim constructions and various other critical pretrial rulings. *In re Columbia University Patent Litigation*, 313 F. Supp.2d at 1385 ("Centralization under Section 1407 is necessary in order to eliminate duplicative discovery; prevent inconsistent pretrial rulings, especially with respect to time-consuming and complex matters of claim construction; and conserve the resources of the parties, their counsel and the judiciary"). *See also In re Cooper Tire & Rubber Co. Tires Prods. Liab. Litig.*, Docket No. 1393, 2001 WL 253115, at *1 (J.P.M.L. Feb. 23, 2001) (transfer ordered where "[a]ll actions involve allegations relating to Cooper's tire design and its manufacturing process"); *In re St. Jude Med., Inc.*, Docket No. 1396, 2001 U.S. Dist. LEXIS 5226, at *2-3 (J.P.M.L. Apr. 18, 2001)

(transfer ordered where "[a]ll actions are brought as class actions...and arise from the same factual milieu, namely the manufacture and marketing of allegedly defective heart valve and replacement products"); *In re Am. Online, Inc. Version 5.0 Software Litig.*, Docket No. 1341, 2000 U.S. Dist. LEXIS 13262, at *3-4 (J.P.M.L. June 2, 2000) (transfer ordered where class action plaintiffs alleged that AOL Version 5.0 conflicted with various types of non-AOL software); *In re GMC Type III Door Latch Prods. Liab. Litig.*, Docket No. 1266, 1999 U.S. Dist. LEXIS 5075, at *1-*2 (J.P.M.L. Apr. 14., 1999) (transfer ordered where "the three actions in this litigation involve common questions of fact concerning allegations that the 'unmodified Type III door latches' on certain GM vehicles are defective and prone to failure"); *In re Chrysler Corp. Vehicle Paint Litig.*, Docket No. 1239, 1998 U.S. Dist. LEXIS 15675, at *2 (J.P.M.L. Oct. 2, 1998) (transfer ordered where "the actions in this litigation involve common questions of fact concerning allegations by overlapping classes of defects in the paint of certain Chrysler vehicles that result in chipping, peeling and discoloration of the paint finish").

**2. Transfer will facilitate the uniformity of claim constructions.**

The cost of multiple claim construction proceedings and the risk of inconsistent pretrial rulings if these actions are not consolidated is an especially important factor. In these patent infringement cases, the claim construction is crucial because it serves as the basis for all other infringement or validity related findings. *See, e.g., Golden Blount, Inc. v. Robert H. Peterson Co.*, 365 F.3d 1054, 1059 (Fed. Cir. 2004) ("A determination of infringement requires a two-step analysis. The court must determine (1) 'the scope and meaning of the patent claims asserted,' and (2) how 'the properly construed claims . . . compare[] to the allegedly infringing device.'") (citation omitted). With a technically complex patent, like the one at issue here, the claim

construction is a demanding and time consuming effort. *See, e.g., In re Columbia University Patent Litigation*, 313 F. Supp.2d at 1385.

If there are different claim constructions, it is possible that some devices using the JPEG standard will be found to infringe the patent in one district, but be found to be non-infringing in another district. Transfer and consolidation will insure that there is a single claim construction ruling for all defendants.

**3. The pending actions are sufficiently complex to warrant consolidation and transfer.**

Section 1407 consolidation is appropriate where the issues involved are complex and consolidation will prevent the duplication of discovery and pretrial rulings, regardless of the number of pending actions. *See, e.g., In re Mosaid Technologies, Inc., Patent Litigation*, 283 F. Supp.2d at 1360-61 (two actions consolidated); *In re Mailblocks, Inc., Patent Litigation*, 279 F. Supp.2d at 1380-81 (two actions consolidated); *In re MLR, LLC, Patent Litigation*, 269 F. Supp.2d at 1380-82 (three actions consolidated).

As discussed above, the pending '672 patent actions clearly present complicated factual issues. All of the cases will require a detailed technical understanding of the '672 patent, the JPEG standard and digital image compression generally. There are also other complex issues, such as the development of the JPEG standard and CLI's involvement in the standard setting process, that will require extensive discovery including discovery from a limited number of non-party witnesses.

There are thousands of potential defendants who all implement the JPEG standard. Moreover, CLI continues to sue large groups of defendants for infringement, having most

recently filed suit against 11 additional defendants, including the Moving Parties, in the beginning of August. It is likely that these suits will continue. Each of these new cases will need to be transferred and consolidated with the current eight actions. *See, e.g., In re Gas Meter Antitrust Litig.*, 464 F. Supp. 391, 393 (J.P.M.L. 1979) ("We see no reason to delay transfer in this litigation because of the possibility that additional actions may be filed in the future. If further actions are filed, they will be treated as tag-along actions by the Panel. [citations omitted] Transfer under Section 1407 at this time will have the salutary effect of providing a ready forum for the inclusion of any newly filed actions in the centralized pretrial proceedings.").

## II. THE PENDING ACTIONS SHOULD BE TRANSFERRED TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

Currently, there are related actions pending in the Northern District of California, the District of Delaware, and the Eastern District of Texas. Because of the locations of the parties, the non-party witnesses and the relevant documents, as well as the courts' case loads and experience with MDL actions, all of the cases should be transferred to the Northern District of California. The pending cases in the Northern District of California are currently before Judge Claudia Wilken and Judge Phyllis Hamilton.

All of these cases are in the preliminary stages. In the *CLI v. Agfa* case the defendants have moved to dismiss for failure to join all necessary plaintiffs or in the alternative to transfer the action to Delaware. In the *Agfa v. CLI* action, defendants have moved to dismiss the action. The other cases are no further along. Discovery was only recently served in the *Agfa* cases and in the *CLI v. Dell* case. Discovery in the other actions has not yet started. As such, no court has

invested significant time or resources in the pending cases that gives it an advantage over other courts in handling these cases.

In situations such as the one presented here, the Panel has held that the convenience of the parties and witnesses is an important factor in determining where to transfer actions for consolidated multidistrict litigation. *See, e.g., In re Air Crash Disaster Near Coolidge, Ariz., on May 6, 1971*, 362 F. Supp. 572, 573 (J.P.M.L. 1973) (location of documents and anticipated witnesses important to consolidation decision). The Panel should select a district that is central to all of the parties, documents and witnesses. *See, e.g., In re Air Crash Near Van Cleve, Miss., on August 13, 1977*, 486 F. Supp. 926, 928 (J.P.M.L. 1980) (despite Mississippi's location as site of air disaster, Panel transferred actions to a court that "would be [a] more centrally located and easily accessible transferee forum than the Southern District of Mississippi."); *In re Wheat Farmers Antitrust Class Action Litig.*, 366 F. Supp. 1087, 1088 (J.P.M.L. 1973) ("[B]ased upon our prior experience with class action antitrust litigation of this nature, additional lawsuits can be expected. It is our conviction that as the suits proliferate, Oklahoma City will be more of a central location to the litigation as a whole than Amarillo, Texas"). To determine what is a convenient jurisdiction, the Panel has considered facts such as the parties' principal place of business and the location of the documents and witnesses necessary to conduct pretrial proceedings. *See, e.g., In re Air Crash Disaster Near Coolidge, Ariz., on May 6, 1971*, 362 F. Supp. 572, 573 (J.P.M.L. 1973).

Convenience to the parties and the witnesses favors transferring all of the cases to the Northern District of California. Both of the named inventors and the prosecuting attorney of the '672 patent live in Northern California. (See Hill Decl., Exhs. 16 & 17) Each of these individu-

als will be critical to this litigation and this factor favors the Northern District of California. *See, e.g., 3Com Corp. v. D-Link Sys., Inc.*, No. CA 03-014 GMS, 2003 WL 1966438, at *2 (D. Del. 2003) (order transferring case to the Northern District of California pursuant to 28 U.S.C. § 1404(a) based in part on the fact that "at least one of the inventors" and "one of the prosecuting attorneys live in northern California"); *Safe Bed Tech. Co. v. KCI USA, Inc.*, No. 02 C 97, 2002 WL 1769991, *5 (N.D. Ill. 2002) (§ 1404(a) transfer motion; "the inventors and prosecutors of the [patent-in-dispute], are, of course, critical to this litigation" and support litigating the case in the district where they live).

Significantly, nearly one-half (18) of the current parties accused by CLI of infringing the '672 patent, including the Moving Parties, are headquartered in California. *See* Exhibit A, attached. Twelve of these companies are headquartered in the Northern District of California. This means that many of the parties' documents and witnesses important to this case are located in California, and specifically the Northern District.

In contrast, the Eastern District of Texas is less convenient than the Northern District of California and has no relevant contact with these actions. None of the parties - including CLI - has its principal place of business in the Eastern District of Texas,[6] and none of the pertinent witnesses or documents are located in that district. Moreover, unlike the San Francisco Bay area, Marshall, Texas, where CLI's three actions are pending, is difficult and expensive for the parties - who are located all around the country - and witnesses to reach.

The Northern District of California's recognized expertise in handling patent cases also counsels in favor of transfer to Northern California. Based on data for the years 1995-1999,

---

6 CLI and Forgent are both headquartered in Austin, Texas, in the Western District of Texas.

patent cases account for a larger percentage of the civil docket in the Northern District of California than in all but two of the ninety-four districts in the country. *See* Kimberly A. Moore, *Forum Shopping in Patent Cases: Does Geographic Choice Affect Innovation?,* 79 N.C. L. Rev. 898, 903 (2000-2001) (hereinafter *"Patent Cases"*).

The Northern District of California also has a well-developed set of local rules specifically for patent cases that are designed to streamline patent litigation. *See Patent Cases*, 79 N.C. L. Rev. at 907; Andrew T. Zidel, Comment, *Patent Claim Construction in the Trial Courts: A Study Showing the Need for Clear Guidance from the Federal Circuit*, 33 Seton Hall L. Rev. 711, 730 (2003). Other courts have used these rules as a model for management of patent litigation. *See* Ellisen S. Turner, Note, *Swallowing the Apple Whole: Improper Patent Use by Local Rule*, 100 Mich. L. Rev. 640, 640-41 (2001); *see also Precision Shooting Equip. v. High Country Archery*, 1 F. Supp. 2d 1041, 1042 (D. Ariz. 1998) (noting that the Northern District of California's patent local rules "promote judicial efficiency by presenting to the Court clearly delineated disputes of claim construction and clearly defined issues of infringement and invalidity prior to any Markman Hearing or trial").

In light of this trio of factors - presence of the '672 patent's named inventors and prosecuting attorney, the presence of key documents and witnesses for many of the accused infringers, and the district's long-held expertise in adjudicating patent disputes - the greatest gains in efficiency, for both the parties and the judiciary, can be achieved if these actions are transferred to the Northern District of California.

The Moving Parties believe that either of the Northern District of California judges presiding over cases against CLI - Judge Wilken or Judge Hamilton - is well-suited to preside

over the pretrial proceedings for all of the '672 patent cases. Both judges have many years of experience presiding over patent cases. According to her LexisNexis "Judicial Strategic Profile," Judge Wilken has presided over 106 patent cases since her appointment to the bench in 1993. (*See* Hill Decl., Exh. 18) Judge Hamilton's profile indicates that she has been involved in 89 patent cases since 1991, both as a Magistrate Judge and District Judge (appointed in 2000). (*Id.*, Exh. 19) In addition, Judge Wilken was the Chair of the Northern District's Rules Committee at the time that district most recently revised its patent local rules. (*See id.*, Exh. 20)

## CONCLUSION

For the foregoing reasons, the consolidation of these overlapping patent infringement actions will further "the convenience of parties and witnesses and will promote the just and efficient conduct of [the] actions." 28 U.S.C. § 1407(a). Therefore, the Moving Parties respectfully request that this Panel enter an order transferring the actions listed in Schedule A of the Moving Parties' motion to a single district for consolidated pretrial proceedings. Further, the Moving Parties respectfully suggest that the District Court for the Northern District of California, or, alternatively, the District of Delaware, would be appropriate transferee courts.

Dated: September 27, 2004

Respectfully Submitted,

David Hansen by KJ

David W. Hansen
Donna Hill
Skadden, Arps, Slate, Meagher
& Flom LLP
525 University Avenue, Suite 1100
Palo Alto, CA 94301
(650) 470-4500
(650) 470-4570 (fax)

Attorneys for Sun Microsystems, Inc. and Yahoo! Inc.

Ryan Kent by KJ

Daralyn J. Durie
Ryan M. Kent
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111
(415) 391-5400
(415) 397-7188 (fax)

Attorneys for Google Inc.

Exhibit
A

# EXHIBIT A

## IN RE: '672 PATENT LITIGATION

### Geographic Dispersement Of Parties Currently Accused Of Infringement

**A. California**

1. Acer America Corporation
2. Apple Computer, Inc.
3. BenQ America Corporation
4. Color Dreams, Inc. (dba StarDot Technologies)
5. Creative Labs, Inc.
6. Fujitsu Computer Products of America
7. Gateway, Inc.
8. Google Inc.
9. Hewlett-Packard Company
10. Kyocera Wireless Corporation
11. Mitsubishi Digital Electronics America, Inc.
12. PalmOne, Incorporated
13. Panasonic Communications Corporation of America
14. Riverdeep, Incorporated (dba Broderbund)
15. Sun Microsystems, Inc.
16. TiVo Inc.
17. Veo Inc.
18. Yahoo! Inc.

**B. Connecticut**

1. Savin Corporation
2. Xerox Corporation

**C. Florida**

1. Concord Camera Corp.

**D. Georgia**

1. Panasonic Mobile Communications Dev. Corp of USA

**E. Illinois**

1. OCE North America, Inc.

**F. Indiana**

1. Thomson SA

**G. Massachusetts**

1. Axis Communications, Inc.
2. ScanSoft, Inc.

**H. Minnesota**

1. JASC Software

**I. New Jersey**

1. Agfa Corporation
2. JVC Americas Corporation
3. Matsushita Electric Corporation of America
4. Onkyo USA Corporation
5. Ricoh Corporation

**J. New York**

1. Audiovox Corporation
2. Audiovox Electronics Corporation
3. Canon, USA, Inc.
4. Eastman Kodak Company
5. Fuji Photo Film USA
6. International Business Machine Corporation
7. Toshiba America, Inc.

**K. Texas**

1. Dell Incorporated (W.D. Tex.)
2. BancTec, Inc. (N.D. Tex.)